# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| ALEJANDRA ARRIETA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. EP-10-CV-00057-RFC |
| | ) | (by consent) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
|     Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c(a)(3). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## PROCEDURAL HISTORY

On December 6, 2006, Plaintiff filed her applications for benefits alleging disability due to diabetes and arthritis that became disabling on November 27, 2006. (R:19, 93-100, 135) [1] The applications were denied initially and on reconsideration. (R:19, 43-48, 51-58) Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing to review her applications *de novo* on August 11, 2008. (R:26-36) The ALJ issued his decision on December 29, 2008, denying benefits at step four of the sequential evaluation process. (R:19-25) Plaintiff's request for review was denied by the Appeals Council on December 10, 2009. (R:1-4)

On February 11, 2010, Plaintiff submitted her complaint and a motion to proceed *in forma pauperis*. (Docs. 1-4) Plaintiff's motion was denied, Plaintiff paid the filing fee, and the complaint was filed. (Docs. 5-7, 15) The Commissioner filed an answer on July 26, 2010, and a certified copy of the transcript of the administrative proceedings was received on July 27, 2010. (Docs. 13, 18) On October 28, 2010, Plaintiff filed her brief in support of her complaint. (Doc. 22) On December 23, 2010, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 31) [2]

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the transcript of the record of administrative proceedings filed in this case, (Doc. 18), is designated by "(R:[page number(s)])".

[2] This cause was initially referred and then reassigned by United States District Court Judge Frank Montalvo to then Magistrate Judge Margaret F. Leachman. (Docs. 2, 19) It was then reassigned to Magistrate Judge David C. Guaderrama. (Doc. 23) Finally, it was reassigned to this Court on April 5, 2011. (Doc. 32) The parties were ordered to file a new notice of consent or non-consent to Magistrate Judge jurisdiction on April 7, 2011, and both parties entered notices consenting to this Court deciding the appeal. (Docs. 33-35)

**ISSUES**

Plaintiff claims that the ALJ's determination that Plaintiff's alleged depression was not a medically determinable mental impairment is not supported by substantial evidence and resulted from legal error. (Doc. 22:2-7)

**DISCUSSION**

*A.     Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, the Court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial-evidence standard, the court must carefully examine the entire record, but may not re-weigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own

judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**B.**     ***Evaluation Process***

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520; 416.920. A person's residual functional capacity ("RFC") is what she can still do despite her limitations or impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that she is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

## C. The ALJ's Decision

First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2008. (R:21) Next, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 27, 2006. (*Id.*) At the second step, the ALJ found that Plaintiff had severe impairments of obesity, Type II diabetes mellitus, and polyarthralgias. (*Id.*) The ALJ also discussed Plaintiff's allegations of depression. He stated:

> Although the claimant alleges depression, there is no evidence that she has consulted or received treatment from a psychiatrist or a mental health professional. In a consultative psychological exam performed on February 12, 2007, the claimant was noted to be despondent with labile affect. She was focused on her pain and preoccupied by negative images of her self []. While she claims that she has problems with memory and concentration, her memory of events appeared normal. She was able to memorize and recall a list of four digits. She had no difficulties and/or inconsistencies in recalling the chronology of events of her life []. Progress notes dated May 13, 2008 reveal she was taking Paroxetine for depression and was feeling "better". She denied anhedonia and easy crying. Accordingly, I find the claimant's depressive disorder is not a medically determinable impairment.

(R:21-22)

At the third step, the ALJ found that neither Plaintiff's impairments nor combination of impairments met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, to be presumed disabled. (R:22) The ALJ then carefully considered the entire record, including Plaintiff's symptoms of depression, and found that such symptoms could reasonably be expected to result from her medically determinable impairments. (R:22-23) The ALJ then found that Plaintiff had the RFC to perform light work with only occasional climbing, kneeling, stooping, and crawling. (*Id.*) In light of Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a boot assembler, cable assembler with computers, and motor home awning assembler. (R:24) Because she could perform this work, the ALJ found that

5

Plaintiff had not been under a disability, as defined in the Social Security Act, from November 27, 2006, through the date of the ALJ's decision. (*Id*.)

**D.	Relevant Medical Evidence of Record**

Nothing in Plaintiff's medical records prior to her consultative examination reflects complaints of or treatment for any mental impairment.

On February 12, 2007, Plaintiff submitted to a consultative mental status examination by Guido A. Barrientos, Ph.D. (R:215) Plaintiff's chief complaint was that she has suffered from depression and mood swings for several years, cries for no reason, feels sad, and has lost interest in many activities she used to do. (R:216) Her problems started when she was diagnosed with diabetes and arthritis in 2001; her work was affected, but she continued to work until her other conditions worsened in 2006. (*Id*.) She stopped working because they were laying people off and for health reasons. (*Id*.) After she stopped working, her depression and mood changes intensified and she developed problems of sleep, anxiety, fatigue, memory, and concentration. (*Id*.) Plaintiff had not consulted or received treatment from a psychiatrist or a mental health professional for her problems of depression; she was not under psychiatric treatment and was not taking any antidepressant or anti-anxiety medications; she was taking four medications for her diabetes and arthritis. (R:216-17) Plaintiff reported being able to take care of her daily needs such as dressing, bathing, cooking, doing household work; she could buy groceries; she is totally ambulatory, though slow; she can manage money and daily affairs; and she can relate and interact with people including friends and relatives. (R:216)

Dr. Barrientos found Plaintiff to be mentally alert, well oriented, but despondent in her mood, noting that she wept during the interview. (R:217) Her affect appeared labile, she was informally

attired, but appeared clean and well groomed, she did not exhibit bizarre behaviors or ideas. (*Id*.) Plaintiff's thought content was affected by her emotions, focusing on her constant pain and physical discomfort. (*Id*.) Her mood was very tense and she had a blank expression on her face, but her tone of voice was normal; she was not otherwise agitated or in distress. (*Id*.) She had a friendly and cooperative attitude and was able to focus on and provide answers to the questions. (*Id*.) Her memory appeared normal, although she did not remember who the first president of the United States was. (*Id*.) Her judgment and insight appeared dull and restricted; she was convinced that she is totally disabled and would never be able to work again. (*Id*.) Although she mentioned that she was very depressed, she had not thought of seeking psychiatric or mental health assistance. (*Id*.) She had poor insight into her problems and her reasoning and judgment appeared limited; she had not considered the possibility of returning to work. (R:218)

Dr. Barrientos's diagnostic impression was that Plaintiff had Dysthymic Disorder, mood disorder due to medical condition, and pain disorder. (R:218) He assessed her Global Assessment of Functioning ("GAF") as 55. (*Id*.) His prognosis was guarded, noting that Plaintiff was not receiving psychiatric treatment. (*Id*.) He recommended psychiatric care and pain management training so that she could return to work within her limitations, and found her to be mentally competent to manage her daily affairs. (*Id*.)

On February 28, 2007, Don Marler, Ph.D., a state agency physician, reviewing the evidence of record, concluded that Plaintiff had a non-severe medically determinable mental impairment, related to affective and somatoform disorders, a dysthemic disorder/mood disorder due to medical condition and a pain disorder. (R:223-26, 229) He found Plaintiff's limitations included only mild restrictions in the activities of daily living. (R:233) He found that the evidence of record did not

establish the presence of the "C" criteria. (R:234) He concluded that Plaintiff's mental allegations were partially supported by the evidence of record, noting that the only evidence in the record to support Plaintiff's allegations of depression and anxiety was the consultative examination performed on February 12, 2007, which showed that Plaintiff had never sought psychiatric care and does not take any medication for her symptoms although she sees a doctor and takes medication for her diabetes and osteoarthritis. (R:235) He noted that Plaintiff was able to take care of all of her activities of daily living including shopping, cooking, bathing, and that she had worked up until November 2006 when she was laid off. (*Id*.) He noted that the consultative examining physician recommended that Plaintiff follow up with psychiatric care and pain management. (*Id*.) He found Plaintiff's mental allegations partially supported by the evidence of record. (*Id*.)

On April 7, 2007, based on the same consultative examination evidence and pursuant to Plaintiff's request that her application be reconsidered, the state agency consulting physician Robert Gilliland, M.D., assessed Plaintiff for affective and somatoform disorders and found she had mood disturbance with depressive syndrome, resulting in sleep disturbance, psychomotor agitation or retardation, decreased energy, and difficulty concentrating or thinking. (R:249, 252) He assessed a medically determinable somotoform impairment of pain disorder. (R:255) He assessed moderate limitations in the areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace; no episodes of decompensation, and no evidence to establish "C" criteria. (R:259-60) Dr. Gilliland noted that the consultative examination report reflected that Plaintiff was despondent with a labile affect, that she was focused on her pain, and that she had a Global Assessment of Functioning of 55 with limitations due to fatigue and pain. (R:261) Dr. Gilliland filled out a mental RFC form. Although Plaintiff was not significantly limited in most areas of functioning,

8

she was moderately limited with respect to her ability to maintain attention and concentration for extended periods of time, her ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to interact appropriately with the general public; and to respond appropriately to changes in work settings, travel in unfamiliar places or use public transportation, or set realistic goals or make plans independently of others. (R:263-64) He found Plaintiff to be markedly limited with her ability to understand, remember, and carry out detailed instructions. (R:263) Dr. Gillialand explained that the alleged severity of the mental limitations was not fully supported by the evidence of record which suggests the presence of significant depression exacerbated by pain, but that her ability to function does not seem wholly compromised; she appears capable of understanding and remembering simple instructions and interacting appropriately with coworkers and supervisors and adapting to change in a typical work setting. (R:265)

On April 9, 2007, after reviewing the evidence in the file and the state agency physicians' RFC assessment of February 28, 2007, state agency physician Robin Rosenstock, M.D., affirmed the denial of benefits. (R:267)

On June 30, 2007, in an outpatient visit, Edgar Reyes, Physician Assistant ("P.A."), noted that Plaintiff had a diagnosis of depression with anxiety with nearly constant symptoms including fear of dying, palpitations, and tachycardia. (R:309) It was noted that Plaintiff was not currently and had no prior treatment for anxiety. (*Id.*) Her medical history was noted for being pertinent for depression. (*Id.*) Plaintiff was not taking any medications at the time of her exam. (R:310) Her affect/demeanor was anxious with normal psychomotor function, speech pattern, thought, and

perception. (*Id*.) Plaintiff's treatment plan for depression with anxiety included increasing physical activity, contacting a support group, and resuming social interaction; a psychotherapy referral was initiated to a psychologist. (R:311) There is no evidence in the record reflecting that Plaintiff ever submitted to psychotherapy or saw a psychologist pursuant to such referral. Plaintiff was prescribed Paxil (Paroxetine) and Xanax (Alprazolam). (R:310-11) The record does not reflect that Plaintiff actually took any of the medication until September 2007.

P.A. Reyes saw Plaintiff five times between the June 30, 2007, visit and the September 25, 2007, visit. The records from each of those five visits include depression with anxiety in Plaintiff's list of current problems, but reflect no complaints as to such problems and do not list Paxil or Xanax as medication Plaintiff was currently taking. (R:314-27) Additionally, notes from a visit on July 5, 2007, indicate as to Plaintiff's psychiatric condition that she had an appropriate affect and demeanor, normal psychomotor function, normal speech pattern, and normal thought and perception. (R:314) Records from a visit on July 26, 2007, reflect that orders for Paxil and Xanax were entered although no complaints were recorded and a treatment plan was provided only with respect to Plaintiff's diabetes. (R:319-23) Records from August 25, 2007, reflect that Plaintiff's subjective report of symptoms was negative regarding psychiatric issues. (R:326)

On September 25, 2007, P.A. Reyes again included depression with anxiety in Plaintiff's list of current problems, but no complaint or exam related to this problem was reflected in the notes. (R:329-30) The list of medications Plaintiff was taking at that time included Paxil. (R:330) This was the same on October 2, 2007, and again on October 11, 2007. (R:332-35) In October, Plaintiff was again prescribed Xanax and it appears that she began taking it. (*Id*.)

10

On January 10, 2008, Plaintiff was seen by Dr. Cervantes, M.D., who discussed the case with Dr. Oscar Noriega, M.D., with complaints of shoulder pain. (R:370) Paxil and Xanax were listed as a medications not on the medication sheet, and it was reported that Plaintiff had no current depression or anxiety. (R:370) Depression and anxiety, however, were both included in the assessment listing her medical history. (R:371)

On January 17, 2008, Plaintiff was seen by Dr. Duerdo, M.D., and Dr. Noriega, and there was no mention of depression in the medical record from that visit. (R368-69)

On April 22, 2008, medical records signed by Jacinto Obregon, M.D., and co-signed by Oscar A. Noriega, M.D., reflect that Plaintiff was following up on her chronic problems, including depression, for which she reported taking only Paxil, although both Paxil and Xanax were listed as active medications, but she felt the same, complaining of anhendonia and easy crying, stating that medicine has helped but it is not controlled 100%. (R:362-63) Plaintiff's MDD was assessed as uncontrolled. (R:365)

Plaintiff's medical records dated May 13, 2008, again signed by Dr. Obregon, and cosigned by Dr. Noriega, note that Plaintiff was increased on her Paroxetine for her MDD; Plaintiff presented for follow up regarding her chronic problems, including depression, regarding which Plaintiff reported feeling better, denying anhedonia and easy crying and stating that the medication has helped. (R:359-61) Plaintiff's MDD was assessed as controlled. (R:360)

Records from a visit to Dr. Edward C. Saltzstein, M.D., on June 4, 2008, the last medical record Plaintiff provided in support of her claim, addressed only Plaintiff's mammogram. (R:382) No other medical records were submitted regarding additional complaints or treatment after June 4, 2008, for Plaintiff's alleged depression and anxiety and none were alleged to have occurred.

*E.     Analysis*

Plaintiff claims that the ALJ erred in finding that Plaintiff does not suffer from a medically determinable mental impairment. (Doc. 22:2-3) She challenges the ALJ's stated reasons for this conclusion, including that "there is no evidence that she has consulted or received treatment from a psychiatrist or a mental health professional." (Doc. 22:3-4 (citing R:21)) Plaintiff argues that the ALJ's findings are refuted by evidence that Plaintiff submitted to a consultative psychological examination and was assessed and treated for depression and anxiety by her treating physicians. (Doc. 22:4 (citing R:30-310, 329, 362))

In his decision, the ALJ referred to both the consultative psychological examination performed on February 12, 2007, and the medical records reflecting that Plaintiff was taking Paxil for depression under the care of her treating physicians. (R:21-22) Plaintiff does not contend that those treating Plaintiff were mental health professionals. Although the consultative examination was conducted by a mental health professional, Plaintiff had not sought that consultation and it was not conducted for the purpose of determining or providing a course of treatment for Plaintiff. Further, although Dr. Barrietnos recommended that Plaintiff obtain psychiatric care, and her own treating source submitted a referral to see a psychologist, there is no evidence in the record that Plaintiff sought consultation or treatment from a mental health professional.

The import of this finding is that the failure to seek treatment is an indication of nondisability. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The failure to follow prescribed treatment is, likewise, an indication of nondisability. *Id*. In fact, the regulations require that prescribed treatment be followed and provides for a finding of nondisability based on the failure to follow prescribed treatment without good reason. 20 C.F.R. §§ 404.1530(a),(b). Plaintiff not only

12

failed to seek treatment by a mental health care professional of her own accord, but she provided no good cause for failing to pursue the referral to such professional from her treating physician or for her failure to take medication for almost three months after it was initially prescribed by her treating physician.

Second, Plaintiff argues that the ALJ's reliance on Plaintiff's report that she was "feeling better" was erroneous. (Doc. 22:7) Plaintiff contends that the Fifth Circuit has determined that mental impairments are not subject to the normal duration requirements of other impairments and may be considered disabling despite occasional periods of remission. (Id. (citing *Moore v. Sullivan*, 885 F.2d 1065 (5th Cir. 1990)) Plaintiff highlights her testimony at the hearing that she forgets things, feels very depressed, and wants to start crying "for just anything." (*Id.* (citing R:33)) It does not follow, however, that the ALJ erred.

The ALJ's decision does not rely on the duration requirement in finding Plaintiff's depression to not be a medically-determinable impairment. Rather, the ALJ's finding rests on the evidence reflecting that once Plaintiff's depression was treated with medication, it was brought under control. Impairments that can be reasonably remedied or controlled by medication or treatment are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

The burden of proof rests on the Plaintiff until the fifth step of the sequential analysis. *Bowen v. Yuckert*, 482 U.S. at 146 n. 5. Therefore, it was Plaintiff's burden to provide evidence that her depression waxed and waned and that her depression was not in fact "controlled" by the

reasonable treatment provided by her treating sources. Plaintiff provided no records from visits to her doctors after her depression was found to be controlled where she complained of recurring depressive symptoms despite continued adherence to prescribed treatment. The fact that she did not seek additional treatment for such allegedly recurring symptoms, as discussed above, is an indication of nondisability. *See Villa v. Sullivan*, 895 F.2d at 1024.

Finally, Plaintiff asserts that the ALJ erred by failing to mention and explain the weight given to the opinion of one of the nonexamining state agency physicians, Dr. Gilliland, which she argues the ALJ was required by the regulations to do. (Doc. 22:5; R:21-24); 20 C.F.R. §§ 404.1527(d), 416.927(d). Plaintiff argues that such error requires reversal. (Doc. 22:6 (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981))

The regulations require an ALJ to consider and weigh all medical opinions, including physician statements reflecting judgments about the nature and severity of impairments. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The regulations further provide that "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

While it is true that the ALJ did not mention Dr. Gilliland's assessment in his decision, the ALJ stated that he made the findings expressed in his decision after careful consideration of the

14

entire record, including opinion evidence in accordance with the regulations. (R:21-22) The ALJ's findings indicate that the ALJ gave controlling weight to Plaintiff's treating physicians who found that Plaintiff's depression was controlled with reasonable treatment. (*See* R:21-22) Thus, the ALJ was not required to explain the weight given to opinions from other sources.

Even if the ALJ's failure to provide such explanation or finding that Plaintiff's depression was not a medically determinable mental impairment because it was controlled were error, however, such error would be harmless based on the evidence in the record. Dr. Gilliland was a nonexamining source, his opinion on reconsideration was inconsistent with the state agency consultant's opinion on initial consideration, which was based on the same evidence in the record, the consultative mental examination report, and his opinion was neither supported by the consultative report nor did it assess Plaintiff's mental condition when under reasonable treatment. Moreover, although the ALJ found Plaintiff's depression to not be a medically determinable impairment, the ALJ considered Plaintiff's symptoms of depression in determining her RFC. (R:22-23)

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). This Court will remand for further proceedings only where the procedural imperfection casts doubt on the existence of substantial evidence to support the ALJ's decision of non-disability. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

The Court finds the ALJ's determination is supported by substantial evidence. Thus, Plaintiff is not entitled to relief based on the claims raised.

## **CONCLUSION**

The Court concludes that any alleged error was harmless and the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. Based on the foregoing, it is hereby **ORDERED** that the Commissioner's determination be **AFFIRMED**.

**SIGNED** and **ENTERED** on August 31, 2011.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE